IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

LARRY K. DAVIS, *et al.*,         *
                                  *
    Plaintiffs,                   *
                                  *
vs.                               *   CIVIL ACTION NO. 17-00068-CG-B
                                  *
THE HILLMAN GROUP, INC., *et al.*,*
                                  *
    Defendants.                   *

## Report and Recommendation

This matter is before the Court on Plaintiffs' Motion to Remand. (Doc. 5). The motion, which has been fully briefed, was referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) for appropriate action. Upon review of the motion, supporting and opposing briefs and materials, the undersigned **recommends** that the motion be **granted**, and this case remanded to the Circuit Court of Conecuh County, Alabama.

## I.   Background

Plaintiffs Larry K. Davis and Brenda Davis filed suit in the Circuit Court of Conecuh County, Alabama for injuries Larry Davis sustained when he fell from a wooden ladder.[1] (Doc. 1-1 at 12-15). According to Plaintiffs, the ladder was constructed using defective wood screws that sheared prematurely in four locations, and did not function as intended. This in turn caused

---

[1] Plaintiff Brenda Davis alleges loss of consortium due to the injuries sustained by her husband Larry Davis. (Id. at 29).

1

the ladder to collapse and Plaintiff Larry Davis sustained injuries as a result. (Id. at 16). Plaintiffs have named as Defendants The Hillman Group, Inc., Salter Hardware, Inc., Do It Best Corporation, and other unnamed Fictitious Defendants. (Id. at 12). Plaintiffs assert that as a "direct and proximate" result of Defendants' conduct, "both individually and in concert or conspiracy with one another", they have suffered damages from utilizing the defective wood screws. (Doc. 1-1 at 13).

Defendant The Hillman Group, Inc. (hereinafter "Hillman") removed this action from the Circuit Court of Conecuh County, Alabama to this Court on February 6, 2017. (Doc. 1). In the Notice of Removal, Hillman asserts the existence of diversity jurisdiction pursuant to 28 U.S.C. § 1441(a).[2] According to Hillman, Plaintiffs are citizens of Alabama; Defendant Hillman was incorporated in Delaware with its principal place of business in Ohio; and Defendant Do It Best Corporation ("DIB") is an Indiana corporation with its principle place of business in Indiana. (Id. at 2, 5). Hillman contends that the citizenship

---

[2] With respect to the amount in controversy, Hillman asserts that while Davis has not requested a specific amount, this type of "indeterminate" prayer for relief is no barrier to a diversity based removal, particularly as it is clear that his alleged injuries will exceed $75,000 given that Davis suffered a "fractured shoulder, arm, and humoral neck"; that he was required to undergo "multiple surgeries"; and that he incurred and continues to incur significant medical expenses, pain, anguish, and emotional distress. (Id. at 7-8).

of Defendant Salter Hardware (hereinafter "Salter"), an Alabama corporation, should be disregarded because Salter has been improperly joined in this action. (Id. at 2). Hillman avers that Plaintiffs cannot state a plausible cause of action against Salter because Code of Alabama § 6-5-521 provides immunity to innocent sellers like Salter.[3] (Id. at 3).

In support of its removal, Hillman submitted the affidavit of Gerald Salter, a principal shareholder of Salter.[4] (Doc. 1-1). In his affidavit, Gerald Salter asserts that he is familiar with the screws referenced in Plaintiffs' complaint, that the screws are sold in his store, that he does not manufacture, inspect or test the screws, that the screws are received from the manufacturer in a sealed box, and are in turn sold to customers in the same sealed box in which they are received at the store, that the store acts as a "mere conduit" of the screws, and that he is not aware of any claim or assertion that there was anything defective with the screws. (Id.)

---

[3] Count Seven of the Complaint does not fall under the liability immunity provided in Code of Alabama § 6-5-521. However, neither party disputes that personal injury damages are precluded by § 2311(b)(2) of the Magnuson-Moss Act, which is the subject of that claim.

[4] Hillman also submitted the affidavit of Steve Markley, vice president of Merchandising for Defendant DIB. (Doc. 1-1 at 7-9). According to Markley, DIG acquires products like the screws referenced in Plaintiffs' complaint from vendors such as the Hillman group, the screws are received in sealed packaging, and DIB then sells the screws in the sealed packaging to independently owned stores like Salter. (Id.)

Plaintiffs filed the instant motion to remand (doc. 5), and argues that Defendant Salter is not an 'innocent seller' protected by Code of Alabama § 6-5-521(b) because Plaintiffs have not asserted independent claims against Salter. (Doc. 5; Doc. 8 at 5). According to Plaintiffs, they have alleged a number of claims against Salter and the other Defendants including Negligence/Gross Negligence, the Alabama Extended Manufacturer's Liability Doctrine, Implied Warranty of Fitness for a Particular Purpose, Implied Warranty of Merchantability, Express Warranty, Fraudulent Misrepresentation, Magnuson-Moss Warranty Act violation and Vicarious Liability/Respondeat Superior. (Docs. 5, 8). Plaintiffs assert that they have alleged sufficient facts to state a plausible claim against Salter based on its independent conduct; thus, Salter has not been fraudulently joined notwithstanding the Gerald Salter affidavit. (Id.)

In its response in opposition to Plaintiffs' motion (doc. 7), Hillman argues that Plaintiffs have made no specific allegations regarding the conduct of Salter, and have not provided any evidence contesting the essential facts set forth in the Salter and Markley affidavits. (Id. at 2). Accordingly, there is no possibility that Plaintiffs can state a valid claim against Salter.

**Analysis**

**A. Standard of Review**

A removing defendant has the burden of proving proper federal jurisdiction. See Adventure Outdoors, Inc. v. Bloomberg, 552 F.3d 1290, 1294 (11th Cir. 2008); Friedman v. New York Life Ins. Co., 410 F.3d 1350, 1353 (11th Cir. 2005)("In removal cases, the burden is on the party who sought removal to demonstrate that federal jurisdiction exists.")(citation omitted). Because removal infringes upon state sovereignty and implicates central concepts of federalism, removal statutes must be construed narrowly, with all doubts resolved in favor of remand. See Univ. of S. Ala. v. Am. Tobacco Co., 168 F.3d 405, 411 (11th Cir. 1999); Burns v. Windsor Ins. Co., 31 F.3d 1092, 1095 (11th Cir. 1994). Furthermore, "once a federal court determines that it is without subject matter jurisdiction, the court is powerless to continue." Underwriters at Lloyd's, London v. Osting-Schwinn, 613 F.3d 1079, 1092 (11th Cir. 2010)(internal quotes omitted).

Where Hillman, as the removing party, has predicated removal on diversity jurisdiction, it bears the burden of establishing complete diversity of citizenship and establishing by a preponderance of the evidence that the amount in controversy exceeds $75,000. Tapscott v. MS Dealer Service Corp., 77 F.3d 1353, 1356 (llth Cir. 1996), overruled on other grounds by Cohen v. Office Depot, Inc., 204 F. 3d 1069 (llth

Cir. 2000)("[W]e hold where a plaintiff has made an unspecified demand for damages in state court, a removing defendant must prove by a preponderance of the evidence that the amount in controversy more likely than not exceeds the. . .jurisdictional requirement."). Moreover, as a procedural matter, the removal must be timely. See Clingan v. Celtic Life Ins. Co., 244 F. Supp. 2d 1298, 1302 (M.D. Ala. 2003)("The time limit in 28 U.S.C. § 1446(b) is 'mandatory and must be applied.'"); cf. Moore v. North Am. Sports, Inc., Inc. 623 F. 3d 1325, 1329 (11th Cir. 2010)("[T]he timeliness of removal is a procedural defect-not a jurisdictional one.")

**B. Discussion**

As noted *supra,* Hillman has predicated removal on diversity jurisdiction. Thus, it has the burden of establishing that all plaintiffs are completely diverse from all defendants, and that the amount in controversy exceeds the sum or value of $75,000, exclusive of interest and costs. Triggs. V. John Crump Toyota, Inc., 154 F.3d 1284, 1287 (11th Cir. 1998); Tapscott, 77 F.3d at 1357; Underwriters, 613 F. 3d at 1085. Turning first to the amount in controversy requirement, the undersigned observes that, although no amount is stated in the complaint, the fact that the amount exceeds $75,000 is readily deducible as Davis alleges "a fractured shoulder, arm, and humoral neck" that required "multiple surgeries", and ongoing pain, mental anguish,

and emotional distress. (Doc. 1-1 at 10-13). Hillman contends, and Plaintiffs do not dispute, that these medical costs; additional claims of mental anguish, physical pain and suffering; and the demand for punitive damages would easily exceed $75,000. (Doc. 1 at 9). Under these circumstances, the undersigned finds that the jurisdictional threshold of $75,000 has been met. The Court thus turns its attention to the question of whether there is complete diversity of the parties.

Again, as the removing defendant, Hillman has the burden of establishing complete diversity of citizenship.[5] Plaintiffs are citizens of Alabama; thus, Hillman must establish that no properly joined defendant is a citizen of Alabama. (Id.). There is no dispute that Defendants Hillman and DIB are incorporated outside of Alabama and have their principle place of business outside of Alabama. Thus the question is whether Salter, which is an Alabama corporation, has been fraudulently joined, such that its citizenship should be ignored in determining the existence of complete diversity.

Hillman, as the removing party, has the "heavy" burden of proving fraudulent joiner. Henderson v. Washington Nat'l Ins.

---

[5] While Plaintiffs have alleged the presence of fictitious defendants, the citizenship of any such defendants is disregarded for the purposes of determining diversity of citizenship. 28 U.S.C. § 1441(b)(1); Sellers v. Bolttech Mannings, Inc., 2013 WL 2635564 at *3 (S.D. Ala. June 11, 2013)(citations omitted).

Co., 454 F.3d 1278, 1281 (llth Cir. 2006); Buxton v. Wyatt, 2008 U.S. Dist. LEXIS 94035, 2008 WL 4951322 (M.D Ala. Nov. 19, 2008)(citing Crowe v. Coleman, 113 F.3d 1536, 1538 (llth Cir. 1997)). Under Eleventh Circuit precedent, a defendant seeking to prove that a co-defendant was fraudulently joined must demonstrate that:

> (1) there is no possibility that the plaintiff can prove a cause of action against the [non-diverse or] resident defendant; or (2) the plaintiff has fraudulently pled jurisdictional facts to bring the resident defendant into state court." Id.

Henderson, 454 F.3d at 1281.

The Court must evaluate the parties' factual allegations and submissions in the light most favorable to the plaintiff and resolve all uncertainties about state substantive law in favor of the plaintiff. Crowe, 113 F. 3d at 1538. The court's inquiry must be based upon "the plaintiff's pleadings at the time of removal, supplemented by any affidavits and deposition transcripts submitted by the parties." Pacheco de Perez v. AT&T Co., 139 F.3d 1368, 1380 (11th Cir. 1998).

The fraudulent joinder standard differs from, and is less stringent than, the Twombly/Iqbal "plausibility" test that governs motions to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure. See Kimball v. Better Business Bureau of West Florida, 613 Fed. Appx. 821, 823 (11th Cir. June 2,

2015) ("Notably, the standard for assessing fraudulent joinder differs from the one used for Rule 12(b)(6) motions to dismiss[.]"). Whereas the Twombly test "asks for more than a sheer possibility that a defendant has acted unlawfully, … all that is required to defeat a fraudulent joinder claim is "a possibility of stating a valid cause of action."" Stillwell v. Allstate Ins. Co., 663 F.3d 1329, 1333 (11th Cir. 2011). This means that in analyzing a fraudulent joinder claim, the court must look to the pleading standard applicable in the state court as opposed to the plausibility standard prevailing in federal court. Stillwell, 663 F.3d at 1334.[6]

> Under Alabama law, "dismissal for failure to state a claim is properly granted only when it appears beyond a doubt that the plaintiff can prove no set of facts entitling him to relief." Stovall v. Universal Constr. Co., 893 So. 2d 1090, 1101 (Ala. 2004) (citations omitted); see also Ex parte Austal USA, LLC,    So.3d    , 2017 Ala. LEXIS 20, 2017 WL 836567, *5 (Ala. Mar. 3, 2017) ("a Rule 12(b)(6) dismissal is proper only when it appears beyond doubt that the plaintiff can prove no set of facts in support of the claim that would entitle the plaintiff to relief")(citation and internal quotation marks omitted); Mooneyham v. State Bd. of Chiropractic Examiners, 802 So.2d 200, 203 (Ala. 2001) ("[m]otions to dismiss under Rule 12(b)(6) should be granted sparingly") (citation omitted). Thus, Alabama law provides that "[t]he dismissal of a complaint is not proper if the pleading contains even a generalized statement of facts which will support a

---

[6] See Stillwell, 663 F.3d at 1334 ("To determine whether it is possible that a state court would find that the complaint states a cause of action, we must necessarily look to the pleading standards applicable in state court, not the plausibility pleading standards prevailing in federal court.").

claim for relief." McKelvin v. Smith, 85 So.3d 386, 389 (Ala.Civ.App. 2010) (citations and internal quotation marks omitted)(footnote omitted).

McKenzie v. Janssen Biotech, Inc., 2017 U.S. Dist. LEXIS 95553, 2017 WL 2670738 (S.D. Ala. June 21, 2017).

In this action, Hillman contends that Defendant Salter was fraudulently joined in this action because Salter is an innocent seller immune from suit pursuant to Code of Alabama § 6-5-521(b). Under this section:

> (b) No product liability action may be asserted or may be provided a claim for relief against any distributor, wholesaler, dealer, retailer, or seller of a product, or against an individual or business entity using a product in the production or delivery of its products or services (collectively referred to as the distributor), unless any of the following apply:
>
> > (1) The distributor is also the manufacturer or assembler of the final product and such act is causally related to the product's defective condition.
> >
> > (2) The distributor exercised substantial control over the design, testing, manufacture, packaging, or labeling of the product, and such act is causally related to the product's condition.
> >
> > (3) The distributor altered or modified the product, and the alteration or modification was a substantial factor in causing the harm for which recovery of damages is sought.
> >
> > (4) It is the intent of this

> subsection to protect distributors
> who are merely conduits of a
> product. This subsection is not
> intended to protect distributors
> from independent acts unrelated to
> product design or manufacture,
> such as independent acts of
> negligence, wantonness, warranty
> violations, or fraud.

Code of Alabama § 6-5-521(b).[7]

Plaintiffs argue that these code sections are inapplicable, as Defendant Salter is not an 'innocent seller' as contemplated by the statute. (Doc. 5 at 3-4). Based upon the allegations enumerated in their complaint, Plaintiffs claim that the Defendants have failed to establish "by clear and convincing evidence" that there is no possibility that Plaintiffs could establish any of the named causes of action against Salter, the only non-diverse Defendant. (Doc. 5 at 4). According to Plaintiffs, the affidavits provided by the Defendants contain only "conclusory, self-serving statements" that are "extremely broad", and are not sufficient to meet the burden of proving fraudulent joinder. (Id.).

In support of their assertions, Plaintiffs cite <u>Barnes v.</u>

---

[7] In their Response to Plaintiffs' Motion to Remand, Defendant Hillman also cites Code of Alabama § 6-5-501(2)(a)(4), which they argue is virtually identical to the code section cited above. That segment states that it is the intent of the subsection "to protect distributors who are merely conduits of a product", but not to protect "distributors from independent acts unrelated to product design or manufacture, such as independent acts of negligence, wantonness, warranty violations, or fraud." Code of Alabama § 6-5-501(2)(a)(4).

General Motors, LLC, 2014 U.S. Dist. Lexis 89277, 2014 WL
2999188 (N.D. Ala. July 1, 2014), and Lazenby v. ExMark
Manufacturing Company, 2012 WL 3231331, 2012 U.S. Dist. LEXIS
109356 (M.D. Ala. Aug. 6, 2014). Lazenby involved a products
liability lawsuit brought by a decedent's estate after a riding
lawnmower rolled over him while he was mowing the lawn. The
plaintiff asserted claims for negligence and wantonness against
the manufacturer and seller of the riding lawnmower, and argued
that the riding lawnmower was designed and sold without a
rollover protection system, which would have prevented the
accidental death. The manufacturer removed the action and
argued that the non-diverse distributor who sold the lawnmower
was fraudulently joined because § 6-5-521 immunized the
distributor from products liability suits; thus, its citizenship
could not defeat diversity jurisdiction. In granting the
plaintiff's motion to remand, the Court held that:

> The decision to stock and sell a product that was
> known to be likely or probable to cause injury could
> constitute an independent act of wantonness that is
> separate from any act related to the design or
> manufacture of the product itself. That theory is that
> it is not the particular design flaw of the product
> that is the basis for the claim, but the decision of
> the defendant to sell a product (any product) that it
> knows to be unreasonably dangerous.
>
> Whether Plaintiff's theory of wantonness is precluded
> because of its attenuated connection to the
> manufacture and design of the product is an unsettled
> question of Alabama law. Section § 6-5-501 was amended
> in 2011 to add the additional language barring

products liability claims against distributors. See
Ala. Act 2011-627. Claims against distributors for
independent wanton conduct were not precluded by this
act. Considering the recent change in the law and the
debatable nature of Plaintiff's wantonness claim, it
would be inappropriate for the court to determine that
there is no basis for Plaintiff maintaining an action
against PPE. Plaintiff "need[s] only [to] have a
possibility of stating a valid cause of action in
order for the joinder to be legitimate." Triggs, 154
F.3d at 1287 (emphasis added); see also Florence v.
Crescent Res., LLC, 484 F. 3d 1293, 1298-99 (11th Cir.
2007) (remand is appropriate where there is any
ambiguity or doubt regarding the plaintiff's state law
claim against a non-diverse defendant). Plaintiff has
presented an unsettled question of law, which favors
remanding this case for the Alabama state courts to
interpret the law. See Legg, 428 F.3d at 1323.

Lazenby, 2012 U.S. Dist. LEXIS 109356, 2012 WL 3231331 at * 9-
11.; see also Barnes, 2014 U.S. Dist. LEXIS 89277, 2014 WL
2999188 at *5.("[W]hile § 6-5-521 is clearly meant to protect
sellers who unknowingly sell products that later prove to be
defective. . .it is plausible that the drafters of [the]
legislation entitled the Innocent Sellers Act did not intend for
it to immunize sellers who deliberately choose to sell dangerous
products to unwary consumers."); Robinson v. Invacare
Corporation, 2013 WL 5567084, *2, 2013 U.S. Dist. LEXIS 145960,
*4 (S.D. Ala. Oct. 9, 2013)("The Alabama courts have not
construed these new statutes and, until they do so, their
meaning remains uncertain. Because the Court must "resolve any
uncertainties about the applicable law in the plaintiff's favor
. . . that uncertainty is fatal to removal.")(internal citations

omitted).

Defendant Hillman attempts to distinguish the instant action from the above-referenced cases. According to Hillman, Plaintiffs' complaint contains no specific allegations regarding the conduct of Salter Hardware, as all allegations are aggregated against "the Defendants", and the affidavit of Gerald Salter states that Defendant Salter was a mere conduit of the packaged screws. (Doc. 7 at 3). Hillman further states that at no point do the Plaintiffs attempt "to create any issue of fact that Salter Hardware (a) simply resold the screws it received from its distributor, or (b) before the sale of the 'accident screws' it had no notice of any claim or assertion that there was anything defective about screws of this type." (Id. at 3-4). According to Hillman, the difference between the Plaintiffs' allegations in this action and those in the aforementioned case law is that, in the cases favoring remand, "the Court found that the local defendant was actively at fault: he or it either did something or knew something beyond simply selling the product as a "mere conduit" as addressed in the statute." (Id. at 15)(emphasis in original).

The undersigned notes, as a preliminary matter, that while Plaintiffs' complaint is not the model of clarity, Plaintiffs have asserted several causes of actions against all Defendants, "collectively and individually", including Defendant Salter.

14

Further, while Hillman has submitted affidavits that aver that Salter was not involved in the manufacture, design, testing or marketing of the subject wood screws, the affidavits do not address Plaintiffs' fraudulent misrepresentation claim. And, while Plaintiff's fraudulent misrepresentation claim against Defendants is not terribly detailed, it does not have to be. See McKenzie, 2017 U.S. Dist. Lexis 95553, 2017 WL 2670738 (To overcome the "very lenient" hurdle of fraudulent joinder, the factual allegations in the complaint "albeit patchy" need only support a possibility that the plaintiffs can establish a negligence claim against the defendant.)

Plaintiffs' claim for fraudulent misrepresentation is governed by § 6-5-101 of the Alabama Code. Mosley v. Wyeth, Inc., 719 F. Supp. 2d 1340, 1346 (S.D. Ala. 2010). In order to succeed on a fraudulent misrepresentation claim, a plaintiff must show 1) a misrepresentation of material fact, 2) made willfully to deceive, recklessly, without knowledge, or mistakenly, 3) which was justifiably relied on by the plaintiff under the circumstances, and 4) which caused damage as a proximate consequence. Id. (citations omitted); see also Southern v. Pfizer, Inc., 471 F. Supp. 2d 1207, 1217 (N.D. Ala. 2006) (same). Additionally, a plaintiff must establish that the defendants owed them a duty. Mosley, 719 F. Supp. at 1346 (citing Nesbitt v. Frederick, 941 So. 2d 950, 955 (Ala. 2006)

15

("An essential element of fraudulent-misrepresentation . . . claims is a duty to disclose.")).

Although Plaintiffs' fraudulent misrepresentation claim is disjointed, a fair reading of the entire complaint includes allegations that around the time the screws were purchased from Salter, Defendants, including Salter, made false representations to Plaintiffs which Plaintiffs relied upon to their detriment.[8] According to Plaintiffs, Defendants, including Salter, knew or had reason to know that Plaintiffs were acquiring the subject wood screws for outdoor construction projects utilizing wood framing, that Plaintiffs were relying on Defendants' superior skill, judgment, and experience in selecting the proper wood screws for their projects, that Defendants represented to Plaintiffs that the wood screws had been tested and were appropriate for their intended use, that the representations were false, misleading or made with reckless disregard for the truth, and that Plaintiffs reasonably relied upon said misrepresentations in purchasing and using the screws to their detriment. These allegations focus on alleged conduct by Salter

---

[8] Indeed, there is 11th Circuit precedent providing that "the precise contours of the pleading requirements are not dispositive", and that the court's task is not to gauge the sufficiency of the pleading. The "inquiry is more basic: we must decide whether the defendants have proven by clear and convincing evidence that no Alabama court could find this complaint sufficient." Ullah v. BAC Home Loans Serving LP, 538 Fed. Appx. 844, 846 (11th Cir. 2013).

and the other Defendants that is arguably separate and apart from the design, manufacture and marketing of the wood screws. In the absence of guidance by an Alabama court as to what conduct falls outside the protection afforded by the Innocent Seller Act, the undersigned cannot conclude that Hillman has met its heavy burden of showing that there is no possibility Plaintiffs can establish a cause of action against Salter.

Indeed, as aptly noted by the Court in Dalraida Properties, Inc. v. Elastikote, 2015 U.S. Dist. LEXIS 92498, 2015 WL 4393158 (M.D. Ala. June 23, 2015):

> Whether the evidence in this case ultimately supports Plaintiffs' allegations is not the issue and is a matter for another day. Plaintiffs have alleged enough to meet the bare elements of a claim of [fraudulent] misrepresentation under Alabama law.

Elastikote, 2015 U.S. Dist. LEXIS 92498, 2015 WL 4393158 at *10. Accordingly, this case is due to be remanded.

### C. Conclusion

For the reasons set forth above, the undersigned finds that the Defendant has not met their burden of establishing the existence of diversity of citizenship, as necessary to support diversity jurisdiction pursuant to 28 U.S.C. § 1332. Accordingly, the undersigned RECOMMENDS that Plaintiffs' Motion to Remand be **GRANTED**, and that this case be remanded to the Circuit Court of Conecuh County.

## Notice of Right to File Objection

A copy of this report and recommendation shall be served on all parties in the manner provided by law. Any party who objects to this recommendation or anything in it must, within fourteen (14) days of the date of service of this document, file specific written objections with the Clerk of this Court. *See* 28 U.S.C. § 636(b)(1); FED.R.Civ.P. 72(b); S.D. ALA. GenLR 72(c). The Parties should note that under Eleventh Circuit Rule 3-1, "[a] party failing to object to a magistrate judge's findings or recommendations contained in a report and recommendation in accordance with the provisions of 28 U.S.C. § 636(b)(1) waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions if the party was informed of the time period for objecting and the consequences on appeal for failing to object. In the absence of a proper objection, however, the court may review on appeal for plain error if necessary in the interest of justice." *11ᵗʰ Cir. R. 3-1*. In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the Magistrate Judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the Magistrate Judge is not specific.

**DONE** this **28th** day of **June, 2017.**

**/s/ SONJA F. BIVINS**
**UNITED STATES MAGISTRATE JUDGE**
